IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENNIS H. JACOB,

                Plaintiff,         Case No. 3:08 CV 1555

  -vs-

                                     <u>MEMORANDUM   OPINION</u>

HOME SAVINGS AND LOAN
COMPANY OF YOUNGSTOWN, OHIO

                Defendant.

KATZ, J.

This matter is before the Court on cross-motions: Defendant Home Savings and Loan Company of Youngstown, Ohio has filed a motion for summary judgment (Doc. 25), and Plaintiff Dennis H. Jacob has filed a motion for partial summary judgment (Doc. 24). For the reasons that follow, Defendant's motion will be granted and Plaintiff's denied.

**I. Background**

In April 2006, Plaintiff applied for a residential construction loan with Defendant's Loan Origination Office in Perrysburg, Ohio, for the purpose of constructing a home in Ottawa Lake, Michigan. At the loan closing, which occurred in June 2006, Plaintiff signed several documents, including a Note, a Mortgage, a "Construction Loan Agreement", and a "Construction Loan Addendum." As is relevant at present, the Construction Loan Addendum contained the following terms:

> 1. Construction Period
>
> This Addendum shall govern Borrower's obligations and rights during the Construction Period, which shall begin on the date of the Note and this Addendum and end on 04/01/2007, unless Lender in its sole discretion extends that date.
>
> ***

> 6. Conversion to Permanent Loan
>
> If at any time the Construction Period ends, construction is not complete or the property not lawfully occupied, Lender may withhold such portion of the principal as it deems necessary to ensure the completion of construction and readiness for occupancy of the property. Borrower will pay interest under the Note as if the full amount of the principal has been disbursed in that event. Upon conversion, all accrued and unpaid interest up to conversion date shall be due in full and paid to the Lender.

(Doc. 25, Exh. C).

During the Construction Period, Plaintiff was required to make regular monthly payments of interest only on the monies advanced for construction purposes. At the end of the Construction Period, the contract provided that the remaining portion of the principal amount of Plaintiff's loan might be withheld by Defendant to ensure the completion of construction of Plaintiff's home. In that event, Plaintiff would pay interest under the Note as if the full amount of the principal had been disbursed.

Defendant notified Plaintiff, by way of a letter dated April 2, 2007, that his construction loan would convert to the conventional permanent mortgage on May 1, 2007 and that the first payment of $1,313.86 was due by May 15, 2007.  Upon receiving this Notice, Plaintiff notified Defendant, by way of a letter dated April 13, 2007, that he wished to extend the Construction Period by 60 days.  As a result of Plaintiff's request, the Construction Period was extended for two additional months

At the end of the extended construction period, Defendant again notified Plaintiff, by letter dated June 1, 2007, that the construction loan was going to convert to a conventional mortgage on July 1, 2007 "because your construction period has ended or the construction of your home is complete."  Upon receiving this Notice, Plaintiff did not seek any additional extensions from

2

Defendant. As a result, the loan converted from a construction loan to the permanent loan, and Plaintiff began making the full principal and interest payments required under the Note.

Plaintiff continued making the regular monthly payment of $1,313.86 under the Note until he refinanced with another financial institution in July 2009. Plaintiff filed the instant action on June 27, 2008, alleging that Defendant: violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA), and specifically the Regulation Z ("Regulation Z"), 12 C.F.R. § 226, which was promulgated by the Federal Reserve Board to implement TILA; breached its contract with Plaintiff; and misrepresented certain facts regarding principal and interest payments. He also alleges that public policy disfavors the enforcement of any provision in the loan documents that purports to permit Defendant to charge interest on "undisbursed" principal without evidence of damages. Defendant now moves for summary judgment on all of these claims.

**II. Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the

opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch*

4

*Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

*A. Regulation Z*

Plaintiff alleges in his Complaint that Defendant violated Regulation Z by not providing him with new financial disclosures when the construction period ended and the conversion to the permanent financing period began. According to Plaintiff, the conversion to permanent financing constituted a "refinancing", requiring Defendant to provide him with additional TILA disclosures.

Regulation Z says that "[a] refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer." 12 C.F.R. § 226.20(a). But Regulation Z also provides that "[a] series of advances under an agreement to extend credit up to a certain amount may be considered as one transaction", and "[w]hen a multiple-advance loan to finance the construction of a dwelling may be permanently financed by the same creditor, the construction phase and the permanent phase may be treated as either one transaction or more than one transaction." 12 C.F.R. § 226.17(c)(6).

The above-cited language disposes of Plaintiff's claim that the triggering of the "permanent phase" constituted a new "transaction" requiring additional disclosures. In this case, Defendant simply chose to treat the construction phase and permanent phase as a single transaction, which it is entitled to do under the plain language of 12 C.F.R. § 226.17(c)(6). Thus

there was no obligation for Defendant to provide new TILA disclosures at the time the construction period ended. Plaintiff's claims on this point therefore must be dismissed.

***B. Misrepresentation***

Plaintiff's misrepresentation claim is based on his affidavit testimony that he spoke with Morgan Stanley, one of Defendant's loan officers, prior to the conversion to permanent financing in July 2007. Although Plaintiff was concededly "unaware of the provision in the Construction Loan Agreement which purports to allow [Defendant] to charge interest on undisbursed principal" (Doc. 24, Exh. 1 at ¶ 10), he nonetheless alleges that he received "assurance" from Mr. Stanley that "the payment would be allocated only to interest accruing on outstanding principal and then to the pay down [sic] of principal." (Doc. 24, Exh. 1 at ¶ 11). Even assuming the truth of this allegation, however, it does not create an issue of material fact as to Plaintiff's misrepresentation claim.

Ohio defines the tort of "negligent misrepresentation" as follows: "'One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989) (emphasis in original) (quoting Restatement (Second) Of Torts § 552(1) (1965)). Intentional misrepresentation also requires, *inter alia*, "justifiable reliance upon the representation or concealment." *Burr v. Bd. of County Commrs. of Stark County*, 23 Ohio St.3d 69, 73 (1986) (quoting *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984)).

6

It is axiomatic that "[i]f a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." *Dice v. Akron, Canton & Youngstown RR. Co.*, 155 Ohio St. 185, 191 (1951) (Kingsley Taft, J.), rev'd on other grounds, 342 U.S. 359 (1952). In this case, Plaintiff's decision to rely on a loan officer's representation as to what his contract said, without reading the document himself, was clearly not reasonable or justifiable. The Construction Loan Addendum clearly allowed for Defendant to charge "interest under the Note as if the full amount of the principal has been disbursed" in the event of a construction delay, and the Plaintiff cannot shift the blame for his lack of awareness of this provision to Mr. Stanley. Thus, Plaintiff's misrepresentation claim must be dismissed.[1]

## *C. Public Policy*

Finally, Plaintiff submits that the contract at issue in this case violates Ohio public policy against contractual penalties. The test under Ohio law for whether a liquidated damages clause constitutes a penalty is as follows:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficulty of proof and if, (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 29 (1984).

---

[1] Plaintiff argues, relatedly, that the contract at issue in this case is one of adhesion and thus must be strictly construed against Defendant. But because the Court finds that the contract is clear and unambiguous in allowing for Defendant to charge "interest under the Note as if the full amount of the principal has been disbursed" in the event of a construction delay, there is no ambiguity present in the contract for this Court to construe.

In support of this claim, Plaintiff notes that Defendant has admitted that Plaintiff was not in default on any provision of the loan at the time the construction period ended. But that alone does not mean that Defendant did not (or would not) suffer damages as a result of construction delays; nor does it indicate that the increase in Plaintiff's monthly payment was disproportionate to those losses. Because Plaintiff has not presented any other evidentiary material on this point, his claim that the loan's conversion to permanent financing constituted a contractual penalty cannot withstand summary judgment.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 25) is granted and Plaintiff's motion for partial summary judgment (Doc. 24) is denied.

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE